ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2005 OCT 13 AM 8: 13

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

KHARI L. HOLLINS,            )
                             )
        Petitioner,          )
                             )
    v.                       )        CV 105-066
                             )
BILLY TOMPKINS,[1] Warden,   )
                             )
        Respondent.          )

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner Khari L. Hollins filed the above-captioned case pursuant to 28 U.S.C. § 2254. The matter is now before the Court on Respondent's Motion to Dismiss. (Doc. no. 10). Petitioner opposes the motion. (Doc. nos. 13 & 14). For the reasons set forth below, the Court **FINDS** that the petition is time-barred by the applicable one-year statute of limitations. Accordingly, the Court **REPORTS** and **RECOMMENDS** that the motion to dismiss be **GRANTED**, that this civil action be **DISMISSED**, and that a final judgment be **ENTERED** in favor of Respondent.

---

[1] It has come to the Court's attention that Billy Tompkins recently succeeded William Terry as Warden of Smith State Prison. Accordingly, pursuant to Fed. R. Civ. P. 25(d), the **CLERK of COURT** is **DIRECTED** to change the style of the case so that it accurately reflects Warden Tompkins as the Respondent.

## I. **BACKGROUND**

On June 3, 1994, Petitioner, with the assistance of counsel, pleaded guilty in the Superior Court of Richmond County to one count of felony murder.[2] (Resp't Ex. 1, pp. 115-22). Petitioner was sentenced to a term of life imprisonment. (Id. at 134). Petitioner did not file a direct appeal. (Doc. no. 1, Petition, p. 3).

On January 20, 1999, Petitioner filed a state habeas corpus petition in which he alleged that he had received ineffective assistance of counsel. (Resp't Ex. 1, pp. 56-60). The state habeas court held an evidentiary hearing at which Petitioner's trial counsel, Clayton L. Jolly, testified. (Id. at 68). Petitioner cross-examined Mr. Jolly. (Id. at 81-94). In an order dated April 11, 2000 and entered on the docket in the Superior Court of Tattnall County on April 13, 2000, Petitioner was denied state habeas relief. (Id. at 61-64). Petitioner did not apply for a certificate of probable cause to appeal from the Supreme Court of Georgia.

Petitioner filed his second state habeas petition on October 3, 2002. (Resp't Ex. 2). Petitioner again argued that he had been provided ineffective assistance of counsel, but this time he also alleged that his guilty plea was not knowingly and voluntarily entered and that the trial court made several errors. (Id.). Prior to resolution of this second state habeas petition, Petitioner also filed a motion to file an out-of-time appeal in the Superior Court of

---

[2] Petitioner was originally charged in six counts, including two counts of possession of a firearm during the commission of certain crimes, and one count each of malice murder, felony murder, criminal attempt to commit armed robbery, and aggravated assault. (Resp't Ex. 1, pp. 124-28). Once Petitioner pleaded guilty to the felony murder charge outlined above, a *nolle prosequi* order was entered by the court on the remaining counts. (Id. at 134).

which he pleaded guilty. Regardless of the occupation of his victim,[6] the trial court informed Petitioner prior to acceptance of the guilty plea that he was facing a life sentence. (Resp't Ex. 1, p. 117). Petitioner's trial counsel also informed Petitioner that he would face a sentence of life imprisonment prior to entry of the guilty plea; this advice is memorialized in Petitioner's signed Plea of Guilty and Acknowledgment and Waiver of Rights. (Id. at 91-92, 101, 108, 129). Tellingly, Petitioner himself acknowledged at his first state habeas hearing on January 26, 2000 that he knew he was not facing the death penalty:

> Under your legal advisory, just - - you don't think that I almost just really pleaded guilty because it was almost like - - not like a persuasion, but because it was like you was trying to - - you kind of just pushed it like it was the only way to go because I didn't have no other alternative.
>
> **It wasn't like it was a death penalty case.** So you don't think it was kind of odd for me to plead guilty to a life sentence and then - - you wasn't like trying to motivate me to go to trial. . . . .

(Id. at 84-85) (emphasis added).

Yet Petitioner now apparently claims that sometime between this January 26, 2000 evidentiary hearing and his motion requesting permission to file an out-of-time appeal that he submitted on August 14, 2003 in the Superior Court of Richmond County, he somehow determined that he had been mislead by his trial counsel. This belated revelation hardly qualifies for the "due diligence" requirement for discovering a new factual predicate for relief. "Due diligence does not require 'the maximum feasible diligence,' but it does require reasonable diligence in the circumstances." Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir.

---

[6] Other than apparently suggesting that he thought the death penalty was an option because the victim was allegedly a police officer, Petitioner offers no explanation as to what difference the occupation of his murder victim made to the charges he faced.

## I. **BACKGROUND**

On June 3, 1994, Petitioner, with the assistance of counsel, pleaded guilty in the Superior Court of Richmond County to one count of felony murder.[2] (Resp't Ex. 1, pp. 115-22). Petitioner was sentenced to a term of life imprisonment. (Id. at 134). Petitioner did not file a direct appeal. (Doc. no. 1, Petition, p. 3).

On January 20, 1999, Petitioner filed a state habeas corpus petition in which he alleged that he had received ineffective assistance of counsel. (Resp't Ex. 1, pp. 56-60). The state habeas court held an evidentiary hearing at which Petitioner's trial counsel, Clayton L. Jolly, testified. (Id. at 68). Petitioner cross-examined Mr. Jolly. (Id. at 81-94). In an order dated April 11, 2000 and entered on the docket in the Superior Court of Tattnall County on April 13, 2000, Petitioner was denied state habeas relief. (Id. at 61-64). Petitioner did not apply for a certificate of probable cause to appeal from the Supreme Court of Georgia.

Petitioner filed his second state habeas petition on October 3, 2002. (Resp't Ex. 2). Petitioner again argued that he had been provided ineffective assistance of counsel, but this time he also alleged that his guilty plea was not knowingly and voluntarily entered and that the trial court made several errors. (Id.). Prior to resolution of this second state habeas petition, Petitioner also filed a motion to file an out-of-time appeal in the Superior Court of

---

[2]Petitioner was originally charged in six counts, including two counts of possession of a firearm during the commission of certain crimes, and one count each of malice murder, felony murder, criminal attempt to commit armed robbery, and aggravated assault. (Resp't Ex. 1, pp. 124-28). Once Petitioner pleaded guilty to the felony murder charge outlined above, a *nolle prosequi* order was entered by the court on the remaining counts. (Id. at 134).

Richmond County on August 14, 2003.[3] (Doc. no. 1, p. 4; Resp't Ex. 1, pp. 49-54). The state habeas court held an evidentiary hearing on February 25, 2004. (Resp't Ex. 1, pp. 1-34). By an order dated July 2, 2004 and entered on the docket in the Superior Court of Tattnall County on July 6, 2004, this second petition was dismissed as successive. (Resp't Ex. 3). On March 7, 2005, the Georgia Supreme Court denied Petitioner's application for a certificate of probable cause to appeal. (Resp't Ex. 4). Likewise, the Georgia Supreme Court denied Petitioner's motion for reconsideration. (Resp't Ex. 5).

In his current federal petition, signed on April 11, 2005 and filed by the Clerk of Court on April 14, 2005, Petitioner raises three grounds for relief: (1) ineffective assistance of counsel based on incorrect information provided prior to entering the guilty plea; (2) entry of an invalid guilty plea because counsel provided incorrect information about the occupation of the victim (allegedly a police officer); and (3) denial of the right to appeal because of ineffective assistance of counsel. (Id. at 6).

## II. DISCUSSION

### A. Statute of Limitations

Effective April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, amended the statute governing habeas corpus petitions for state prisoners seeking relief in the federal courts. In pertinent part, 28 U.S.C. § 2244 provides:

---

[3]Petitioner maintains that as of the date of filing his current federal petition, that motion was still pending in the Superior Court. (Doc. no. 1, p. 4).

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Moreover, in the Eleventh Circuit, petitions filed after the enactment date of the AEDPA but attacking convictions which became final prior to that date are subject to a bright-line rule. Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1211 (11th Cir. 1998)(*per curiam*). Prisoners whose convictions became final prior to the effective date of the AEDPA must be given a reasonable time after the statute's enactment to file their motions for habeas corpus relief, and "a reasonable period is until April 23, 1997, one year from the date of enactment of § 105 of the AEDPA." Id. (quoting Goodman v. United States, 151 F.3d 1335, 1337 (11th Cir. 1998)). Thus, prisoners seeking federal habeas corpus relief from a conviction which became final prior to April 24, 1996 must have filed their petition in federal court by April 23, 1997, one year after the effective date of the AEDPA, must have

4

otherwise met the statutory requirements for delaying the start of the limitations period, or must have validly raised grounds for equitable tolling of the statute of limitations.

**B.    Finality of Conviction**

Under 28 U.S.C. § 2244(d)(1)(A), a judgment becomes final upon "the conclusion of direct review or the expiration of the time for seeking such review." Thus, Petitioner's conviction became "final" when the thirty (30) day period to appeal provided for by O.C.G.A. § 5-6-38(a) expired.[4] Because Petitioner did not file an appeal after his guilty plea, his conviction became final thirty (30) days after the date of his plea on June 3, 1994.

**C.    Application of the Statute of Limitations**

As his conviction became final prior to the enactment of the AEDPA, his federal petition is therefore governed by the bright-line rule. The Court recognizes that according to the provisions of 28 U.S.C. § 2244(d)(2), the one-year statute of limitations does not run while a properly filed application for post-conviction or collateral review is pending. Jones v. Nagle, 349 F.3d 1305, 1307 (11th Cir. 2003). However, Petitioner did not file his first state habeas corpus petition in the Superior Court of Tattnall County until January 20, 1999, nearly two years past the April 23, 1997 deadline for filing his federal habeas petition. Thus, by the time Petitioner commenced his post-conviction efforts in state court, his one-year period for filing a federal petition had already expired, and therefore, no time period remained to be tolled. Sibley v. Culliver, 377 F.3d 1196, 1204 (11th Cir. 2004)("[O]nce a deadline has expired, there is nothing left to toll. A state court filing after the federal habeas

---

[4]In pertinent part, O.C.G.A. § 5-6-38(a) provides: "A notice of appeal shall be filed within 30 days after entry of the appealable decision or judgment complained of . . . ."

5

filing deadline does not revive it.")(citing Moore v. Crosby, 321 F.3d 1377, 1381 (11th Cir. 2003)). Accordingly, unless there is some reason for tolling the statute of limitations, the current petition is time-barred.

**D.      Tolling the Statute of Limitations**

The AEDPA also describes three other situations which may delay or reset the one-year statute of limitations clock: where there is a newly discovered factual predicate for a petitioner's claim, where the State has created some "impediment" to filing the application, or where the petitioner asserts a right that has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. 28 U.S.C. § 2244(d)(1). Here, Petitioner argues about only one of these possibilities for statutorily extending his federal filing deadline, a newly discovered factual predicate. Specifically, Petitioner claims that he "just recently discovered" that his murder victim was not a police officer, as his counsel allegedly (mis)informed him prior to the entry of a guilty plea. (Doc. no. 1, p. 6).

However, as Respondent points out, Petitioner's allegations about his recent discovery that he was mislead by his trial counsel are not only belied by the record, but Petitioner has not shown the requisite "exercise of due diligence" required to trigger 28 U.S.C. § 2244(d)(1)(D). First, the record reveals that despite Petitioner's current protestation that he was misinformed not only about the occupation of his victim but also about the possibility of a death sentence,[5] he clearly had the correct information prior to the point at

---

[5] According to Petitioner, he pleaded guilty "under the mistaken impression that the victim was a police officer and that the death penalty would be imposed at trial if convicted." (Doc. no. 1, p. 6).

6

which he pleaded guilty. Regardless of the occupation of his victim,[6] the trial court informed Petitioner prior to acceptance of the guilty plea that he was facing a life sentence. (Resp't Ex. 1, p. 117). Petitioner's trial counsel also informed Petitioner that he would face a sentence of life imprisonment prior to entry of the guilty plea; this advice is memorialized in Petitioner's signed Plea of Guilty and Acknowledgment and Waiver of Rights. (Id. at 91-92, 101, 108, 129). Tellingly, Petitioner himself acknowledged at his first state habeas hearing on January 26, 2000 that he knew he was not facing the death penalty:

> Under your legal advisory, just - - you don't think that I almost just really pleaded guilty because it was almost like - - not like a persuasion, but because it was like you was trying to - - you kind of just pushed it like it was the only way to go because I didn't have no other alternative.
>
> **It wasn't like it was a death penalty case.** So you don't think it was kind of odd for me to plead guilty to a life sentence and then - - you wasn't like trying to motivate me to go to trial. . . . .

(Id. at 84-85) (emphasis added).

Yet Petitioner now apparently claims that sometime between this January 26, 2000 evidentiary hearing and his motion requesting permission to file an out-of-time appeal that he submitted on August 14, 2003 in the Superior Court of Richmond County, he somehow determined that he had been mislead by his trial counsel. This belated revelation hardly qualifies for the "due diligence" requirement for discovering a new factual predicate for relief. "Due diligence does not require 'the maximum feasible diligence,' but it does require reasonable diligence in the circumstances." Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir.

---

[6]Other than apparently suggesting that he thought the death penalty was an option because the victim was allegedly a police officer, Petitioner offers no explanation as to what difference the occupation of his murder victim made to the charges he faced.

7

2004). All of the documents upon which Petitioner relies to support his conclusion that he was mislead by counsel were available long before he filed his motion for an out-of time appeal: motion for change of venue referring to victim as police officer and motion for individual voir dire based on questioning about capital punishment, both filed October 20, 1993; competency report dated February 2, 1994 in which Petitioner was quoted as saying he faced the death penalty; and victim's death certificate.[7] (Resp't Ex. 1, pp. 37-39, 43-48). Moreover, the transmittal letter from trial counsel to Petitioner concerning "copies of all relevant materials" from his case is dated October 26, 1998. (Id. at 55).

> As another circuit court has explained:
>
> Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance. If § 2244(d)(1) used a subjective rather than an objective standard, then there would be no effective time limit, as [the petitioner's] case illustrates. . . . [The petitioner] is young, has a limited education, and knows little about the law. If these considerations delay the period of limitations until the prisoner has spent a few years in the institution's law library, however, then § 2244(d)(1) might as well not exist; few prisoners are lawyers.

Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000). Here, there is simply no way to conclude that Petitioner exercised due diligence by taking years to pursue his current claims that he just discovered the true occupation of his victim and the fact that he was not eligible for the death penalty.[8]

---

[7]Notably, these documents also all pre-date Petitioner's signed Guilty Plea and Acknowledgment and of Waiver Rights. (Resp't Ex. 1, p. 129). Also, the motion for change of venue was discussed at the first state habeas hearing. (Id. at 76). As Petitioner cross-examined Mr. Jolly at that hearing (id. at 81-94), he certainly had the opportunity to explore any issues concerning the venue motion at that time.

[8]In fact, Petitioner's own situation appears to be much like that of the petitioner in Owens. At his second state habeas hearing, he explained: "But being that I've been

8

In a nutshell, because the current petition, which challenges a conviction that became final prior to the enactment of the AEDPA, was not filed by April 23, 1997, and because Petitioner has not pointed to any other valid statutory ground for extending the deadline for filing his federal petition, the current petition is time-barred by the AEDPA's statute of limitations unless Petitioner can show that he qualifies for equitable tolling.

"Equitable tolling can be applied to prevent the application of the AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition." Helton v. Secretary for Dep't of Corr., 259 F.3d 1310, 1312 (11th Cir. 2001) (*per curiam*) (citing Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999)); see also Howell v. Crosby, 415 F.3d 1250, 1251-52 (11th Cir. 2005) (recognizing that a petitioner must establish own diligence to obtain benefit of equitable tolling). Nonetheless, equitable tolling is typically applied sparingly, Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000), and is available "only in truly extraordinary circumstances." Johnson v. United States, 340 F.3d 1219, 1226 (11th Cir. 2003), *aff'd*, 125 S. Ct. 1571 (U.S. 2005); see also Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir. 2005) (recognizing rare use of equitable tolling, such as when there has been some affirmative misconduct preventing timely filing). Petitioner bears the burden of proving his entitlement to such equitable tolling. Jones v. United States, 304 F.3d 1035, 1040 (11th Cir. 2002) (*per curiam*), *cert. denied*, 538 U.S. 947 (2003).

---

incarcerated and I've had time to read up on my case and read the law books, then I see that in order for the State to seek the death penalty, they have to let me know. But I didn't know that at 16 years old at the time." (Resp't Ex. 1, p. 14).

Here, Petitioner has not provided any explanation in his petition that would satisfy the "extraordinary circumstances" threshold described above, and as described above, he has not established that he exercised due diligence in pursuing these belated claims. Thus, even if there were extraordinary circumstances in this case, Petitioner's lack of diligence would prevent the Court from applying equitable tolling.[9]

In sum, Petitioner was not prohibited by government action from filing a federal habeas petition. Neither has he validly alleged that any new Supreme Court precedent applies retroactively to compel filing his petition, offered grounds that were not available immediately after sentencing in a timely collateral attack, nor presented any newly-discovered evidence. Likewise, he has alleged no extraordinary circumstance to justify equitable tolling, and he has failed to present any evidence to support a claim of actual innocence. As a result, the instant federal petition is time-barred by the AEDPA's one-year statute of limitations.

### III. CONCLUSION

For the reasons set forth above, the Court **FINDS** that the petition is time-barred by the applicable one-year statute of limitations. Accordingly, the Court **REPORTS** and

---

[9]Nor has Petitioner made a claim of actual innocence that might warrant consideration of an otherwise untimely federal petition. See Wyzykowski v. Department of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000).

10

**RECOMMENDS** that the motion to dismiss be **GRANTED,** that this civil action be **DISMISSED,** and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 13th day of October, 2005, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE